1  R. Alexander Pilmer (SBN 166196)
     apilmer@kirkland.com
2  Yimeng Dou (SBN 285248)
     yimeng.dou@kirkland.com
3  KIRKLAND & ELLIS LLP
   333 South Hope Street, 29th Floor
4  Los Angeles, California 90071
   Telephone:  (213) 680-8400
5  Facsimile:   (213)680-8500

6  Maronel Barajas (SBN 242044)
     Maronel.barajas@drlcenter.org
7  Anna Rivera (SBN 239601)
     anna.rivera@drlcenter.org
8  Mallory Sepler-King (SBN 298262)
     Mallory.sepler-king@drlcenter.org
9  DISABILITY RIGHTS LEGAL CENTER
   350 S. Grand Avenue, Suite 1520
10 Los Angeles, CA  90071
   Telephone:  (626) 389-8277
11 Facsimile:   (213) 736-1428

13 Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MONICA GAINA and EVELINA GAINA,<br><br>             Plaintiffs,<br><br>   vs.<br><br>NORTHRIDGE HOSPITAL MEDICAL CENTER, DIGNITY HEALTH, and DOES 1-10, Inclusive.<br><br>             Defendants. | CASE NO.:  2:18-cv-00177<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF:**<br><br>1. Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*;<br>2. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*; and<br>3. California Unruh Act, Cal. Civ. Code § 51, *et seq.*<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Monica Gaina ("Plaintiff Monica") and Evelina Gaina ("Plaintiff Evelina") (collectively "Plaintiffs") complain of Defendants Northridge Hospital Medical Center ("Northridge"), Dignity Health ("Dignity"), and Does 1-10, inclusive ("Does") (collectively "Defendants"), and allege as follows:

## INTRODUCTION

1. This is an action for declaratory, damages and injunctive relief, brought pursuant to the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the California Unruh Act ("Unruh") to redress systemic civil rights violations against Plaintiffs who are deaf by Defendants for discrimination based on their disability.

2. The National Center for Health Statistics estimates that there are approximately 37 million individuals who are deaf or hard of hearing living in the United States. The Office of Deaf Access estimates that 3-million individuals who are deaf or hard of hearing reside in California, with approximately 800,000 of those individuals calling the Greater Los Angeles Area home.

3. The ADA was enacted over twenty-five years ago, establishing the most important and comprehensive civil rights law for people with disabilities in our nation's history. One of the principal goals of the ADA is that people with disabilities have equal access to the goods, services, and facilities to places of public accommodation – including hospitals. Prior to the enactment of the ADA, Section 504 of the Rehabilitation Act of 1973 ("Section 503") mandated similar goals for recipients of federal financial assistance. *See* 29 U.S.C. § 794. Despite these long-standing mandates, Defendants have failed to provide Plaintiffs with equal access by failing to provide the appropriate auxiliary aids and services necessary to ensure effective communication to Plaintiffs.

4. Plaintiffs Monica and Evelina, who are mother and daughter, are both completely deaf. Their primary language is American Sign Language ("ASL"). On or about January 9, 2016, Plaintiff Monica's mother, Maria Matei, experienced a medical

emergency and was taken via ambulance to Northridge's emergency room. She was subsequently admitted to the Intensive Care Unit as a patient for heart and kidney failure. Ms. Matei's primary language was Romanian.

5. Ms. Matei remained hospitalized at Northridge until her death on January 27, 2016. Even though Plaintiffs requested ASL interpretation immediately upon their arrival at the hospital, during Ms. Matei's approximately 19-day stay – over 440 hours – Plaintiffs and/or Ms. Matei were provided with less than 24 hours of interpretation services. Indeed, during 12 of the 19 days, no interpretation services were provided at all.

6. For example:
   a. January 9, 2016: upon her arrival at the hospital on January 9, 2016, Plaintiff Evelina notified the hospital that she and Plaintiff Monica required a qualified ASL interpreter. Instead of providing an ASL interpreter, the hospital staff asked Plaintiffs if they could read lips. Plaintiff Evelina informed them that they cannot read lips. No interpreter was provided on January 9.
   b. January 10, 2016: no interpreter was provided on January 10.
   c. January 11, 2016: Approximately 6-hours of interpretation were provided by Bruno Maucere.
   d. January 12, 2016: Approximately 10-hours of interpretation were provided by two different individuals, one named Teresa [last name unknown] and the other named Jesse Govea.
   e. January 13, 2016: Approximately 3-hours of interpretation were provided by Ralph Callagan.
   f. January 14, 2016: Approximately 2-hours of interpretation were provided by Mr. Maucere.
   g. January 15 through January 19, 2016: no interpreter was provided during this five day period.

  h. January 20, 2016: Approximately 2-hours of interpretation were provided by Amber Prow.

  i. January 21, 2016: no interpreter was provided on January 21.

  j. January 22, 2016: Approximately 2-hours of interpretation were provided by George Balayan.

  k. January 23 through January 25, 2016: no interpreter was provided at during this three day period.

  l. January 26, 2016: There was a family conference scheduled between Ms. Matei's physicians and Plaintiffs to inform Plaintiffs of Maria's condition and treatment plans. Although an interpreter was supposed to attend between 3:30 p.m. to 5:30 p.m., none arrived. As a result, the conference did not move forward. Later in the afternoon, a new nurse arrived. Plaintiffs tried to communicate with the nurse about Ms. Matei's treatments by writing on a board, but the nurse was dismissive to Plaintiffs.

  m. January 27, 2016: Ms. Matei passed away at approximately 2:30 a.m. A priest was present but there was no ASL interpreter at the hospital when Maria passed away. Plaintiffs did not get to spend Maria's last moments with her.

  7. Immediately upon arriving at the hospital, and throughout the approximately 19-day hospitalization, Plaintiffs continuously requested ASL. For example, Plaintiff Evelina made a new request with each nurse shift change, and asked that the nurses inform the new, incoming nurses of Plaintiffs' need for an ASL interpreter. These requests frequently went ignored. On one occasion, Defendants attempted to set up Video Remote Interpreting ("VRI"). VRI is an on-demand service that provides communication between persons who are deaf or hard of hearing and hearing persons that are in the same location, utilizing an interpreter by way of a computer with a webcam and internet connection. However, hospital staff did not

know how to use VRI and asked Plaintiff Evelina if she knew how to set it up; she did not. When the staff finally figured out how to turn the machine on, the video continually froze, making it utterly ineffective.

8. Rather than provide an interpreter, the staff forced Plaintiffs to communicate via written notes. This process was not effective for Plaintiffs and was tiresome and emotionally exhausting. Plaintiffs were not familiar with the medical terminology being used and the staff became frustrated that they had to explain things to them in writing. The staff asked Plaintiffs to provide consent for medical decisions and procedures through gestures and note taking. Plaintiffs did not understand what was occurring. Instead of spending quality time with Ms. Matei during her last days, Plaintiffs often had to spend time struggling to communicate with hospital staff.

9. In or about June 2017, Plaintiffs returned to the Northridge emergency room when Plaintiff Monica had a medical emergency. Immediately upon their arrival at approximately 11:30 a.m., Plaintiff Evelina requested ASL interpretation. After approximately 1.5 hours, the hospital staff attempted to utilize VRI, but were unable to figure out how to get it to work until 4:00 p.m. Even after the VRI machine was set up, however, Plaintiffs still did not receive effective communication as the video continued to freeze and the screen was blocked. At 7:00 p.m., 7.5 hours after arriving at the emergency room, the hospital provided an interpreter.

10. Most recently, in or about November 2017, Plaintiff Evelina returned to the emergency room with her fiancé, who is also deaf. Plaintiff Evelina requested an interpreter, and the hospital again offered VRI. Once again, the staff did not know how to set the machine up. They asked Plaintiff Evelina if she knew how to do it, but she did not. Eventually the staff were able to get the video connected, however, the sound was not functioning, so the interpreter could not hear what the staff were saying. Plaintiff Evelina had to rely on text messages to attempt to communicate with hospital staff. At no point during this visit was the VRI functional or was an interpreter provided.

11. Defendants failed to communicate effectively with Plaintiffs or furnish appropriate auxiliary aids and services throughout the course of their time spent at Defendants' facilities. As a result of the failure to provide appropriate auxiliary aides and services, the medical staff were unable to effectively discuss, describe and/or explain Ms. Matei's, Plaintiff Monica, or Plaintiff Evelina's symptoms, medical condition, medications, medical history, tests, treatment options, or medical procedures. They were unable to provide a diagnosis, prognosis, or recommendation for treatment or to obtain informed consent for treatment. Further, the medical staff were unable to communicate with Plaintiffs during treatment, testing procedures, and during physician rounds; to provide information about blood or organ donations; to explain living wills and powers of attorney; or to discuss complex billing or insurance matters.

12. Plaintiffs therefore bring this action seeking declaratory and injunctive relief to compel Defendants to adopt policies, procedures and training to ensure that appropriate auxiliary aids and services are provided to individuals who are deaf and hard of hearing where necessary to ensure effective communication. And seek statutory and actual damages according to proof. As well as reasonable attorney fees and costs.

**JURISDICTION AND VENUE**

13. This is an action for declaratory and injunctive relief, brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182 *et seq.*, Section 504 of the Rehabilitation Act of 1973, and the California Unruh Act, Cal. Civ. Code § 51, *et seq*.

14. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for the federal law claims. Through the same events and omissions that form the basis of Plaintiffs' federal claims Defendants have also violated Plaintiffs' rights under state law, over which this Court has pendent and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over Plaintiffs' claims for

declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 65 of the Federal Rules of Civil Procedure.

15. Venue over Plaintiffs' claims is proper in the Central District of California because Defendants reside in the Central District of California within the meaning of 28 U.S.C. § 1391(b)(2), and because all of the events, acts and/or omissions giving rise to these claims occurred within the Central District of California. In addition, Plaintiffs reside in the County of Los Angeles within the Central District of California.

## PARTIES

### *Plaintiffs*

### *Monica Gaina*

16. When choosing to move to the Greater Los Angeles area, Plaintiffs specifically chose the community of Northridge given the large deaf community. In addition, because of Plaintiff Monica's medical needs, Plaintiffs chose the particular house they live in due to its proximity to the Northridge Hospital Medical Center.

17. Plaintiff Monica Gaina is a person who has been completely deaf since she was born.

18. At all times applicable to this action, Plaintiff Monica has been a qualified individual with a disability as defined by the laws relevant to this Complaint.

19. Because of her disability, Plaintiff Monica is significantly limited in her ability to communicate with others.

20. Plaintiff Monica also has a diagnosis of Amyotrophic Lateral Sclerosis (ALS). As a result of ALS, Plaintiff Monica requires ongoing medical care by her primary care physician who is affiliated with Northridge Hospital. She is frequently sent to Northridge for medical testing. She is also treated by a respiratory specialist who is located within Northridge.

21. Given Plaintiff Monica's health conditions, she is likely to return to both the emergency room and to seek continued medical care at Northridge.

22. Plaintiff Monica is, and at all times relevant to this Complaint was, a resident of Los Angeles County, California.

*Evelina Gaina*

23. Plaintiff Evelina Gaina is a person who has been deaf since she was born.

24. At all times applicable to this action, Plaintiff Evelina has been a qualified individual with a disability as defined by the laws relevant to this Complaint.

25. Because of her disability, Plaintiff Evelina is significantly limited in her ability to communicate with others.

26. Plaintiff Evelina is likely to return to both the emergency room and other departments within Northridge as Plaintiff Monica's companion. In addition to returning to Northridge's emergency room as Plaintiff Monica's companion, due to its proximity to her home, Plaintiff Evelina is likely to return to Northridge's emergency room for her own emergency related needs. Plaintiff Evelina is deterred from seeking future non-emergency medical care at Northridge due to her previous experiences wherein she was denied appropriate auxiliary aids and services. Rather than seek non-emergency medical care at Northridge, which is five (5) minutes from her home, Plaintiff Evelina purposefully selected a primary care physician whose office is thirty (30) minutes away and not affiliated with Northridge.

27. Plaintiff Evelina is a resident of Los Angeles County, California.

**Defendants**

*Northridge Hospital*

28. Defendant Northridge Hospital Medical Center is, and at all times relevant to this Complaint, was, a hospital located at 18300 Roscoe Blvd, Northridge, CA 91325.

29. Upon information and belief, presently, and at all times relevant to this complaint, Northridge was and is a place of public accommodation within the meaning of Title III of the ADA.

30. Upon information and belief, presently, and at all times relevant to this complaint, Northridge receives federal funding within the meaning of the Rehabilitation Act.

*Dignity Health*

31. Upon information and belief, Defendant Northridge is part of Defendant Dignity Health's system. The website of Defendant Dignity Health describes Northridge Hospital Medical Center as "[a] 424-bed, acute care, nonprofit hospital serving the Northridge community since 1955. The only pediatric trauma center in the San Fernando Valley, Northridge Hospital also offers cancer care at the Leavey Cancer Center and a cardiovascular center."

32. Upon information and belief, presently, and at all times relevant to this complaint, Dignity Health was and is a place of public accommodation within the meaning of Title III of the ADA.

33. Upon information and belief, presently, and at all times relevant to this complaint, Dignity Health receives federal funding within the meaning of the Rehabilitation Act.

34. Plaintiffs are informed and believe and thereon allege that each Defendant was the agent and/or employee of every other Defendant and was at all times acting within the scope of such agency.

*Doe Defendants*

35. Plaintiffs are currently unaware of the true names and identities of Doe Defendants 1-10 and therefore sues those Defendants by these fictitious names. Plaintiffs will amend their Complaint to allege the Doe Defendants' legal names and capacities as soon as such information is ascertained. Plaintiffs are informed and believes, and, based thereon alleges, that at all times herein mentioned each and every Defendant was the agent, servant, employee, co-conspirator, and/or representative of each and every other Defendant and was, in doing the things complained of herein, acting within the scope of said agency, service, employment, conspiracy, and/or

representation, and that each and every Defendant was acting within his/her actual or apparent authority with the full knowledge and consent of each other Defendant.

36. Defendants are subject to the federal laws governing discrimination based on disability, including the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973, and their respective implementing regulations.

37. Defendants are also subject to California Laws Governing Discrimination based on disability including the California Unruh Civil Rights Act, California Civil Code § 51 *et seq.*

## FIRST CAUSE OF ACTION
## The Americans with Disabilities Act
(42 U.S.C. § 12182 *et seq.*)

38. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs, and incorporate them herein as if separately alleged.

39. Title III of the ADA provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

40. Defendants are private entities subject to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq*. In addition, Defendant Northridge is a place of public accommodation subject to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq*.

41. The Attorney General is responsible for implementing the foregoing statute by promulgating regulations. 42 U.S.C. § 12134(a).

42. Defendants' conduct, as previously alleged, violates Title III of the ADA and the federal regulations promulgated pursuant to Title III, 28 C.F.R. part 36, and 49 C.F.R. parts 27, 37 and 38.

43. Defendants Northridge, Dignity, and DOES 1-10 have violated Title III of the ADA, by *inter alia*, failing to operate their services on a nondiscriminatory basis; failing to ensure that individuals who are deaf have full and equal enjoyment of the services, facilities, privileges, advantages, or accommodations provided by Defendant Northridge Hospital Medical Center.

44. Pursuant to 42 U.S.C. § 12188, and the remedies, procedures, and rights set forth and/or incorporated therein, plaintiffs pray for judgment as set forth below.

45. By repeatedly failing to provide Plaintiffs with timely, effective auxiliary aids and services as requested that would have provided effective communications, and by relying on family members to interpret for patients, Defendants violated their obligation to ensure that communications with people with disabilities are as effective as those without disabilities. Defendants' failures also discriminated against Plaintiffs in violation of 42 U.S.C. § 12182.

46. Defendants' violations of this statute entitle Plaintiffs to declaratory and injunctive relief to compel Defendants to comply with their obligations under this law. 42 U.S.C. § 12133. Their violations also warrant Plaintiffs' recovery of reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action. *Id.* § 12205.

## SECOND CAUSE OF ACTION
### Section 504 of the Rehabilitation Act of 1973
(29 U.S.C. § 794 *et seq.*)

47. Plaintiffs incorporate by reference the allegations contained in each of the foregoing paragraphs, and incorporate them herein as if separately alleged.

48. "No otherwise qualified individual with a disability. . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "[T]he term 'program or

activity' means all the operations of. . . a department . . .or other instrumentality of a . . . local government . . . ." *Id.* § 794(b).

49. Defendant Northridge receives substantial Federal financial assistance, including numerous grants as well as reimbursements for Medicare and Medicaid services provided. Thus, Defendants are subject to 29 U.S.C. § 794 and its implementing regulations.

50. Any program or activity that receives or benefits from federal financial assistance "shall take appropriate steps to ensure that communications with their . . . beneficiaries are available to persons with impaired vision and hearing." 28 C.F.R. § 41.51.

51. By engaging in the actions and omissions described herein, Defendants have violated the foregoing statutory and regulatory provisions.

52. Defendants' violation of Section 504 of the Rehabilitation Act of 1973 warrants declaratory and injunctive relief to enjoin them from continuing to violate the law, as well as damages suffered by Plaintiffs. 29 U.S.C. § 794a(a)(2). Defendants' deliberate indifference in violating this statute entitles Plaintiffs to damages. Their violations also warrant Plaintiffs' recovery of reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action. 29 U.S.C. § 794a(a)(2); § 794a(b).

## THIRD CAUSE OF ACTION
### Unruh Civil Rights Act
(Cal. Civ. Code § 51 *et seq.*)

53. Plaintiffs allege and incorporate by reference the allegations contained in each of the foregoing paragraphs, and incorporate them herein as if separately alleged.

54. The Unruh Act, California Civil Code § 51, *et seq.*, guarantees equal access for people with disabilities to the accommodations, advantages, facilities, privileges, and services of all business establishments of any kind whatsoever.

55. Upon information and belief, Defendant Dignity Health owns and operates Defendant Northridge, which is a business establishment in the State of California within the meaning of California Civil Code § 51(b).

56. In committing the acts herein alleged, Defendants have discriminated against Plaintiffs on the basis of Plaintiffs' disability in violation of the Unruh Act.

57. A violation of the ADA also constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f). Therefore, Defendants' violation of the ADA constitutes an independent ground establishing their violation of the Unruh Act.

58. Plaintiffs are entitled to injunctive relief to prevent Defendants from further violating the Unruh Act. Cal. Civ. Code § 52(c)(3). In addition, they are entitled to recover statutory damages or actual damages trebled according to proof, as well as to reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action. *Id.* § 52(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. A declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Title III of the ADA, 42 U.S.C. §§ 12182 *et seq.*; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, *et seq.*; and Cal. Civ. Code § 51, *et seq.*;

2. An order and judgment enjoining Defendants, their agents, employees, successors, and all other persons in active concert or participation with Defendants from violating Title III of the ADA, 42 U.S.C. §§ 12182 *et seq.*; Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794, *et seq.*; and Cal. Civ. Code § 51, *et seq.*, and requiring Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing failure to provide full and equal access to persons with disabilities with effective communication. At a minimum, Plaintiffs request that Defendants be enjoined to take the following actions:

      a. Develop and implement policies, practices, and procedures that ensure effective communication with people who are deaf or hard-of-hearing in compliance with Title III of the ADA, Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code § 51, *et seq.*;

      b. Ensure that all future staff are trained in the rights of people with disabilities to ensure effective communication in compliance with Title III of the ADA, Section 504 of the Rehabilitation Act of 1973, and Cal. Civ. Code § 51, *et seq.*; and

      c. Remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court, and until there are reasonable assurances that Defendants will continue to comply in the future, absent continuing jurisdiction.

3. Award Plaintiffs statutory, compensatory, general and actual damages in an amount to be determined by proof, including but not limited to damages under Cal. Civ. Code § 52(a), and, as provided by law;

4. Award Plaintiffs special and consequential damages according to proof;

5. Award any other damages as may be allowed under the laws set forth above;

6. An order awarding Plaintiffs' attorney fees, expert expenses, and costs, as provided by law; and

7. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues.

| | | |
|---|---|---|
| 1 | Dated: January 8, 2018 | /s/ *R. Alexander Pilmer* |
| 2 | | R. Alexander Pilmer |
| | | Attorneys for Plaintiffs |